

**FILED**
FEB - 6 2012

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | | |
|---|---|---|
| JAMES A. COTTIER, | * | CIV 11-4112-RAL |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | |
| | * | |
| STEVE SCHAEFFER, Detective; | * | |
| BRUCE MILLIKAN, Detective; | * | |
| TERRY PERSING, Detective; | * | OPINION AND ORDER GRANTING |
| McCLARY, Detective; | * | DEFENDANTS' MOTIONS TO |
| RUMPZA, Detective; | * | DISMISS |
| THE BUREAU; | * | |
| JOSEPH NEILES, Circuit Judge; | * | |
| LAWRENCE LONG, South Dakota | * | |
| Attorney General; | * | |
| DAVID NELSON, States Attorney; | * | |
| JAMES L. IOSTY, Deputy States Attorney; | * | |
| DUSTIN W. DEBOER, Deputy States | * | |
| Attorney; | * | |
| TIM REISCH, South Dakota Secretary of | * | |
| Corrections; | * | |
| DOUGLAS WEBER, Warden; | * | |
| OWEN SPURRELL, Associate Warden; | * | |
| DARIN YOUNG, Associate Warden; | * | |
| DARYL SLYKHUIS, Deputy Warden; and | * | |
| Unknown South Dakota Department of | * | |
| Corrections Administration, all in their | * | |
| individual and official capacities; | * | |
| | * | |
| Defendants. | * | |

Plaintiff, James A. Cottier, filed a pro se civil rights lawsuit against defendants. Doc. 1. Cottier asserts that the Defendants violated his constitutional rights and his "Indian rights" under the "bad men" clause of the Treaty of Ft. Laramie of 1868, also known as the Sioux Treaty. Defendants filed motions to dismiss Cottier's Complaint pursuant to Rule 12(b)(6) of the Federal

Rules of Civil Procedure. Doc. 35, 58, 59, 62. Cottier also filed a motion in which he asks to speak to the Federal Bureau of Investigation. Doc. 83.

I.     **FACTS**

Although none of the parties provided a recitation of the facts applicable to this case, Cottier's lawsuit appears to revolve around his arrest and subsequent conviction for first-degree manslaughter with a dangerous weapon in South Dakota state court. See State v. Cottier, 2008 SD. 79, 755 N.W.2d 120. Cottier claims that he was "illegally searched and seized" in violation of the Fourth Amendment. Doc. 1 at ¶ 20. Cottier alleges that his Fifth Amendment right against self-incrimination was violated because he "was illegally made a witness against himself." Id. at ¶ 21. Although he does not describe the circumstances of the alleged violation of his rights, Cottier asserts that he "suffers from a mental defect which he cannot be held responsible, [and] another factor is Plaintiff was intoxicated beyond the legal limit by consuming alcohol beverage prior to his illegal seizure." Id. Cottier's next claim is that his rights under the Sixth Amendment were violated when he was not permitted to confront the witnesses against him, that he was "not allowed access to witness statements," and that he was denied the assistance of counsel. Id. at ¶ 22. Cottier also alleges that Defendants violated the Equal Protection Clause because he was sentenced under a "double standard" that Cottier asserts amounts to "reckless disregard or indifference for the Plaintiff's Indian rights." Id. at ¶ 22. Cottier claims he was subjected to cruel and unusual punishment in violation of the Eighth Amendment, but does not specifically identify the conditions or punishments that he believes violate his rights. Cottier maintains that he has been denied both procedural and substantive due process, in violation of the Fourteenth Amendment. Id. at ¶¶ 25-35.

Cottier's next claim relates to the conditions of his incarceration. Cottier claims that his

First Amendment right to free exercise of his religion has been violated because he has not been permitted to "worship through ceremonials and traditional rites of the Lakota Nation" while in prison. Id. at ¶ 36. Cottier argues that all of the alleged constitutional violations also violated his "Indian rights" under the Treaty of Ft. Laramie of 1868.

## II.  STANDARD OF REVIEW

A court must assume as true all facts well pleaded in the complaint. Estate of Rosenberg by Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995). "[A]lthough liberally construed, a pro se complaint must contain specific facts supporting its conclusions." Allen v. Purkett, 5 F.3d 1151, 1153 (8th Cir. 1993) (citations omitted). A plaintiff's complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). If a complaint does not contain these bare essentials, dismissal is appropriate. Beavers v. Lockhart, 755 F.2d 657, 663 (8th Cir. 1985). In Twombly, the Supreme Court of the United States made clear that a complaint's factual allegations must be "enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." 550 U.S. at 555; Abdullah v. Minnesota, 261 Fed. App'x 926, 927 (8th Cir. 2008) (citing Twombly and noting complaint must contain either direct or inferential allegations regarding all material elements necessary to sustain recovery under some viable legal theory).

It has long been recognized that "civil rights pleadings should be construed liberally." Frey v. City of Herculaneum, 44 F.3d 667, 671 (8th Cir. 1995). The complaint, however, must contain facts that state a claim as a matter of law and must not be conclusory. Id. Broad and conclusory statements unsupported by factual allegations are not sufficient. Ellingburg v. King, 490 F.2d 1270

3

(8th Cir. 1974). Although pro se complaints are to be construed liberally, "they still must allege sufficient facts to support the claims advanced." Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004). The Court is not required to supply additional facts for a pro se plaintiff, nor construct a legal theory that assumes facts which have not been pleaded. Id. "[T]o state a claim for relief under § 1983, "a plaintiff must allege facts sufficient to show (1) that the defendants acted under color of state law, and (2) that the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right." Zutz v. Nelson, 601 F.3d 842, 848 (8th Cir. 2010) (internal citations omitted).

## III.  DISCUSSION

### A.  Cottier's claims against Judge Neiles are barred by judicial immunity.

While Cottier does not specify how South Dakota Circuit Judge Joseph Neiles allegedly violated his rights, the Complaint makes clear that Judge Neiles presided over Cottier's trial and sentencing when he was convicted for the underlying criminal offense. See also Cottier, 2008 SD 79, 755 N.W.2d 120 (affirming Cottier's conviction for first-degree manslaughter with a dangerous weapon). Cottier's Complaint names Judge Neiles in his official capacity as "Joseph Neiles, Circuit Judge" and refers to Judge Neiles as a state judicial employee. Doc. 1. Cottier specifically mentions Judge Neiles in his allegations that he was denied procedural and substantive due process. Id. Cottier's claims against Judge Neiles arise out of Judge Neiles' performance of his duties as a circuit judge.

Judge Neiles requests that this Court take judicial notice of the fact that he is a Circuit Court Judge for the State of South Dakota serving in the Second Judicial Circuit which includes Minnehaha County. Such matters may be judicially noticed because they are "generally known

within the trial court's territorial jurisdiction" and "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. The South Dakota circuit courts are courts of general jurisdiction. Article V, Section 5 of the South Dakota Constitution provides, in part:

> The circuit courts have original jurisdiction in all cases except as to any limited original jurisdiction granted to other courts by the Legislature. The circuit courts and judges thereof have the power to issue, hear, and determine all original and remedial writs. The circuit courts have such appellate jurisdiction as may be provided by law.

Thus, Judge Neiles has subject matter jurisdiction over criminal actions, civil actions, and numerous other controversies and his request for judicial notice is granted.

The doctrine of judicial immunity is well-established. "Few doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction[.]" Pierson v. Ray, 386 U.S. 547, 553-54 (1967). Judicial immunity is an immunity from suit, not just from the ultimate assessment of damages. Mireles v. Waco, 502 U.S. 9 (1991) (per curiam). "A judge is absolutely immune from liability if (1) the judge had subject matter jurisdiction, and (2) the acts complained of were judicial acts." Childs v. Reynoldson, 777 F.2d 1305, 1306 (8th Cir. 1985) (internal citations omitted). Cottier's Complaint sues Judge Neiles in his capacity as a circuit court judge. The purported procedural and substantive due process violations Cottier complains of occurred during his criminal trial in the Second Judicial Circuit. Thus, Judge Neiles had subject matter jurisdiction. See S.D. Const., Art. V, § 5. Because Judge Neiles acted within his subject matter jurisdiction, he is entitled to absolute judicial immunity. See Coleman v. Watt, 40 F.3d 255, 259 (8th Cir. 1994) (holding that because subject matter of state judge's action fell within the court's statutory grant of jurisdiction, the judge

5

was entitled to judicial immunity). Cottier's claims against Judge Neiles thus fail to state a claim upon which relief may be granted. Judge Neiles' motion to dismiss accordingly is granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**B.   Cottier's claims against Nelson, Iosty, and Deboer are barred by the doctrine of prosecutorial immunity.**

Cottier also sues David Nelson, James L. Iosty, and Dustin W. Deboer, who prosecuted the state criminal charges against Cottier. Doc. 1. They move to dismiss his Complaint on the basis of prosecutorial immunity. Nelson, Iosty, and Deboer, at all times relevant to this case, were employed as either a State's Attorney or Deputy State's Attorney for Minnehaha County. Cottier's Complaint identifies Nelson as States Attorney and Iosty and Deboer as Deputy States Attorneys. Nelson, Iosty, and Deboer failed to file a written brief in support of their motion, in violation of Rule 7.1 of the Local Rules of Practice, which requires a party to file a brief "containing the specific points of law with the authorities in support thereof on which the movant relies" in support of "every motion raising a question of law." D.S.D. L.R. 7.1(B). Nelson, Iosty, or Deboer also failed to submit affidavits in support of their assertion that they were employed as prosecutors during the time relevant to this case. Despite these shortcomings, the Court will consider their motion because Cottier's claims against these prosecutors are meritless.

The United States Supreme Court held in Imbler v. Pachtman, 424 U.S. 409, 431 (1976) that "in initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983." "Absolute immunity covers prosecutorial functions such as the initiation and pursuit of a criminal prosecution, the presentation of the state's case at trial, and other conduct that is intimately associated with the judicial process." Brodnicki v. City of

6

Omaha, 75 F.3d 1261, 1266 (8th Cir. 1996), *cert. denied*, 519 U.S. 867 (1996). Conversely, a prosecutor is entitled only to qualified immunity when he pursues actions in an "investigatory" or "administrative" capacity. Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993). In determining whether the actions of the prosecutor fit within the absolute or qualified immunity standard, the Supreme Court has adopted a functional approach that looks to "the nature of the function performed, not the identity of the actor who performed it." Forrester v. White, 484 U.S. 219, 229 (1988).

Cottier alleges that he was not afforded "the procedural protections and rights required by federal and state law, including those set forth in SDCL 23A-10-4." Doc. 1 at ¶ 26. Other than his assertion that Nelson, Iosty, and Deboer violated his rights, Cottier provides no other facts in support of his assertions. Given the limited information provided in his Complaint, it appears that Cottier's claims against Nelson, Iosty, and Deboer relate to events that occurred in "initiating and prosecuting" the state's case. Thus, they are entitled to absolute prosecutorial immunity. Accordingly, Nelson, Iosty, and Deboer's motion to dismiss is granted.

C. **The statute of limitations has lapsed on Cottier's claims against Schaeffer, Millikan, Persing, McClary, Rumpza, and the Bureau.**

Cottier also sues Detectives Schaeffer, Millikan, Persing, McClary, Rumpza, and "the Bureau [sic]." These Defendants move to dismiss Cottier's Complaint, asserting that it is barred by his failure to give them 180 days notice of his claim as required under SDCL 3-21-2, and by the applicable statute of limitations. Detectives Schaeffer, Millikan, Persing, McClary, and Rumpza were employed as detectives with the Sioux Falls Police Department at all times relevant to this action.

Detectives Schaeffer, Millikan, Persing, McClary, Rumpza, and "the Bureau [sic]" failed to file a written brief in support of their motion, in violation of Rule 7.1 of the Local Rules of Practice. Local Rule 7.1 requires a party to file a brief "containing the specific points of law with the authorities in support thereof on which the movant relies" in support of "every motion raising a question of law." D.S.D. L.R. 7.1(B). Detectives Schaeffer, Millikan, Persing, McClary, and Rumpza also failed to file affidavits in support of their assertion that they were employed as police detectives during the time relevant to this case. Cottier's Complaint names them as being detectives, Doc. 1, so this Court accepts that they, in fact, were police detectives at all relevant times. The Court will consider their motion to dismiss because Cottier's claim is meritless.

Detectives Schaeffer, Millikan, Persing, McClary, Rumpza, and the Bureau first argue that Cottier's claim is barred by his failure to comply with the 180-day notice requirement set forth in SDCL 3-21-2. SDCL 3-21-2 provides in relevant part that "No action for the recovery of damages for personal injury, property damages, error . . . may be maintained against the public entity or its employees unless written notice of the time, place, and cause of the injury is given . . . within one hundred eighty days after the injury." Failure to given the 180-day notice is fatal to a cause of action under South Dakota law. See Gakin v. City of Rapid City, 2005 SD 68, 698 N.W.2d 493. But state law notice-of-claim requirements do not apply to federal civil rights actions under 42 U.S.C. § 1983, even when the action is brought in state court. See Felder v. Casey, 487 U.S. 131 (1988). The United States Supreme Court observed that "[i]n enacting § 1983, Congress entitled those deprived of their civil rights to recover full compensation from the governmental officials responsible for those deprivations." Id. at 153. Thus, "[a] state law that conditions that right of recovery upon compliance with a rule designed to minimize governmental liability, and that directs

injured persons to seek redress in the first instance from the very targets of the federal legislation, is inconsistent in both purpose and effect with the remedial objectives of the federal civil rights law." Id. Based on this reasoning, the Court found that the notice-of-claim statute was preempted by the remedial scheme of § 1983. Because § 1983 preempts SDCL 3-21-2, Detectives Schaeffer, Millikan, Persing, McClary, Rumpza, and "the Bureau" are not entitled to the dismissal of Cottier's Complaint on this basis.

Detectives Schaeffer, Millikan, Persing, McClary, Rumpza, and "the Bureau" next argue that the statute of limitations has lapsed. There is no time limitation specified in 42 U.S.C. § 1983, so state limitations periods are to be borrowed where it may be done consistently with federal law. 42 U.S.C. § 1988. South Dakota has a three year statute of limitations for actions arising under the federal civil rights statutes. See SDCL 15-2-15.2 ("Any action brought under the federal civil rights statutes may be commenced only within three years after the alleged constitutional deprivation has occurred."). The face of Cottier's Complaint establishes that the "alleged constitutional deprivation" at least with respect to Detectives Schaeffer, Millikan, Persing, McClary, and Rumpza occurred in June of 2005. See Doc. 1 ¶¶ 8-12. Cottier commenced this action in March of 2011. Thus, the three-year statute of limitations bars Cottier's claims against Detectives Schaeffer, Millikan, Persing, McClary, Rumpza, and their employers. Consequently, Cottier has failed to state a claim upon which relief may be granted and these Defendants' motion to dismiss is granted.

**D.    Cottier fails to state a claim upon which relief may be granted against Warden Weber, Associate Warden Spurrell, Associate Warden Young, and Deputy Warden Slykhuis.**

Cottier also sues Warden Weber, Associate Warden Spurrell, Associate Warden Young, and Deputy Warden Slykhuis.[1] They move for a more definite statement pursuant to Rule 12(e) of the Federal Rules of Civil Procedure, or in the alternative, to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Cottier asserts that his incarceration is illegal, that he has been denied certain rehabilitation classes, that his religious activities have been curtailed, and that he has inadequate access to exercise equipment and medical services. See Doc. 1 at ¶¶ 9-19. He also argues that he has been assaulted in prison and is in serious imminent danger. Id. at ¶ 18. None of Cottier's allegations state which defendants were involved in the alleged wrongdoing. Nor has Cottier pleaded facts in support of his allegations. Although pro se complaints are to be construed liberally, "they must still allege facts sufficient to support the claims advanced." Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004). Because Cottier has failed to plead facts in support of his allegations, his claims are subject to dismissal. Thus, Warden Weber, Associate Warden Spurrell, Associate Warden Young, and Deputy Warden Slykhuis's motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is granted.

E.   **The Treaty of Ft. Laramie of 1868 is inapplicable to Cottier's present situation.**

Cottier's final claim is that defendants violated his "Indian rights" under the "1868 Treaty with the Sioux, Article I, the Bad Men Clause." The "bad men" clause Cottier references provides that:

---

[1] Tim Reisch, as South Dakota Secretary of Corrections, is also named as a defendant, but has not been served. The same arguments applicable to Cottier's claims against Warden Weber, Associate Warden Spurrell, Associate Warden Young, and Deputy Warden Slykhuis would apply to Reisch.

> If bad men among the Indians shall commit a wrong or depredation upon the person or property of any one, white, black, or Indian, subject to the authority of the United States, and at peace therewith, the Indians herein named solemnly agree that they will, upon proof made to their agent and notice by him, deliver up the wrong-doer to the United States, to be tried and punished according to its laws . . .

Art. I, paragraph 3, Treaty of Ft. Laramie of 1868. Cottier does not specify what treaty rights he believes Defendants violated and does not plead any facts in support of his assertion that his "Indian rights" were violated.

The treaty Cottier references was between the Sioux Nation and the United States. Cottier was convicted in South Dakota state court and the Defendants are state officials and employees. The State of South Dakota was not a party to the treaty and did not yet exist when the treaty was signed. Moreover, Cottier committed a homicide on the campus of what was known as the School for the Deaf in Sioux Falls, an area that was not part of the territory guaranteed to the Sioux Nation in the Treaty of Ft. Laramie of 1868. See Cottier, 2008 SD 79, ¶ 2, 755 N.W.2d 120, 124. Thus, the treaty has no bearing on Cottier's state court conviction. Moreover, the United States Court of Appeals for the Eighth Circuit consistently has rejected arguments that the Treaty of Ft. Laramie of 1868 deprives the federal courts of jurisdiction over offenses committed in Indian Country or creates any requirement that the United States notify the tribe before arresting and prosecuting a tribal member. See United States v. Drapeau, 414 F.3d 869, 878 (8th Cir. 2005). Thus, Cottier has failed to state a claim upon which relief may be granted under the Ft. Laramie treaty. Therefore, it is hereby

ORDERED that Defendant Judge Joseph Neiles' motion to dismiss (Doc. 35), Defendants Detectives Schaeffer, Millikan, Persing, McClary, Rumpza, and "the Bureau's [sic]" motion to

dismiss (Doc. 58), Defendants Nelson, Iosty, and Deboer's motion to dismiss (Doc. 59), and Warden Weber, Associate Warden Spurrell, Associate Warden Young, and Deputy Warden Slykhuis' motion to dismiss (Doc. 62), are granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and Cottier's Complaint is dismissed for failure to state a claim upon which relief may be granted. It is further

ORDERED that Cottier's motion to speak to the FBI (Doc. 83) is denied as moot because the case is being dismissed.

Dated February 6, 2012.

BY THE COURT:

_____
ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE